Ruth J. COUNTRYMAN, et al., Appellees,

v.

MT. PLEASANT BANK & TRUST COMPANY, Appellant.

Robert D. ADAM, et al., Appellees,

v.

MT. PLEASANT BANK & TRUST COMPANY, Appellant.

Nos. 69584, 83–58.

Supreme Court of Iowa.

Nov. 14, 1984.

601

Michael L. Noyes of Rehling, Lindburg & Gosma, Davenport, for appellant.

Thomas J. Vilsack of Bell & Vilsack Law Office, Mount Pleasant, for appellees Countryman, et al.

James P. Hoffman, Keokuk, and James Walker, Bloomington, Ill., for appellees Adam, et al.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, CARTER, and WOLLE, JJ.

UHLENHOPP, Justice.

This consolidated appeal principally involves the trial court's jury instructions in an action alleging a conspiracy to defraud farmers who sold or stored grain in an elevator which became defunct. *See also Adam v. Mt. Pleasant Bank & Trust Co.*, 340 N.W.2d 251 (Iowa 1983); *Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868 (Iowa 1984). The issues are such that the Countryman judgment stands or falls with the Adam judgment. We take up the Adam case first. As plaintiff farmers prevailed before the jury in that case, we view the evidence in the light most favorable to them.

▆▆▆ The action is grounded on conspiracy to defraud. Conspiracy is a combination of two or more persons through concerted action to accomplish an unlawful end or to accomplish a lawful end by unlawful means. *Basic Chemicals, Inc. v. Benson*, 251 N.W.2d 220 (Iowa 1977). Here plaintiffs charge that an elevator and a bank by concerted action accomplished an unlawful end: they let plaintiff farmers sell or store grain in the elevator which they knew was insolvent and already short a large quantity of grain that had been stored there. Two of the essential elements of actionable fraud are "scienter" and "intent to deceive". *Grefe v. Ross*, 231 N.W.2d 863, 864 (Iowa 1975). *See also Beeck· v. Kapalis*, 302 N.W.2d 90 (Iowa 1981); *Hagarty v. Dysart-Geneseo Community School District*, 282 N.W.2d 92 (Iowa 1979).

Prairie Grain Company, an elevator in Stockport, Iowa, initially had a checking account with defendant Mt. Pleasant Bank & Trust Company. Prairie Grain was owned in part and operated in whole by Raymond Keller. R.J. Bontrager was executive officer of the bank. At Bontrager's urging, the bank became Prairie Grain's principal bank. Later, Keller was made a member of the board of directors of the bank, and still later he resigned that office.

Farmers in the Stockport area, including plaintiffs, sold or stored grain at Prairie Grain, receiving a check or a warehouse receipt or scale ticket.

Over a period of years, Prairie Grain sank deeper and deeper into insolvency. At the end it had storage shortages of 1,203,939 bushels of corn, 531,326 bushels of soybeans, 10,079 bushels of wheat, and 9,303 bushels of oats. At the time of its collapse, Prairie Grain had loans from a St. Louis bank in excess of $1,975,000 and from defendant Mt. Pleasant Bank in excess of $357,000, and Keller personally owed the latter bank $216,500. As a collateral matter, Bontrager at one time borrowed $10,000 from Keller for expenses connected with remodeling Bontrager's home, and Keller simultaneously borrowed an identical amount from the bank. As Bontrager paid Keller interest on the loan, Keller paid the bank the same interest on his own loan.

When Prairie Grain ultimately went to the wall and the facts became public as to its condition, Keller committed suicide and Prairie Grain was declared bankrupt. Subsequently the bank also closed, and the Federal Deposit Insurance Corporation accepted the receivership.

Prairie Grain's checking account at the bank was overdrawn on a daily basis over a lengthy period. The bank regularly received checks in excess of the account balance. It would call Prairie Grain and hold open the account and its bookkeeping department for deposits, so that the overdrafts could be paid. Some of the deposits would be uncollected checks on other banks at the time credit was given for them, resulting, in effect, in a loan by the bank. These uncollected checks would at times exceed $200,000 a day. Eventually the bank began to dishonor Prairie Grain's overdrafts.

The bank ordinarily had a legal lending limit of $230,000 to any one customer. Plaintiffs claim the jury could find that the

bank exceeded the limit by giving credit for uncollected checks and by lending to Prairie Grain and Keller, and that the loans to Keller and Prairie Grain must be considered together. Plaintiffs also claim that Bontrager received an item of value for procuring a loan for a bank customer in the transaction involving the two loans of $10,000 each.

In the same time frame, the principal owners of the bank sought to sell their stock, and eventually did so before the bank closed.

Plaintiffs in the consolidated cases are farmers who sold their grain to Prairie Grain and did not get paid or stored their grain and did not get it back. They commenced this damage action against the bank based on the theory that Prairie Grain, insolvent and short substantial quantities of grain, nonetheless received their grain and thereby defrauded them, and that the bank acted in concert with Prairie Grain in the fraud. The bank candidly states in its brief, "There is no dispute that Prairie Grain was defrauding its customers." The dispute rages over the second part of the case, whether the bank acted in concert with Prairie Grain. The heart of this issue is whether the bank knew of Prairie Grain's fraud when, by its banking operations, it made possible the continued operation of Prairie Grain and the receipt of plaintiffs' grain. The bank does not argue that plaintiffs failed to generate a jury question on that issue. Plaintiffs' principal factual argument, in addition to the manner of the bank's handling Prairie Grain's account and the bank's loans to Prairie Grain and to Keller, is that the bank owners sought to keep the bank and Prairie Grain operating despite Prairie Grain's condition until they could "bail out" by disposing of their bank stock.

The jury found for plaintiffs in excess of $2,000,000, and the bank appealed.

Three main problems confront us, relating to jurisdiction, instructions, and damages.

I. *Jurisdiction.* The bank timely filed its notice of appeal from the date the trial court ruled on its post-trial motions, but plaintiffs argue that those motions were filed in the wrong county and did not extend the time for filing notice of appeal after entry of judgment.

The record presents an unusual situation regarding the place of trial, and we believe the trial court and the parties were proceeding more by informal acquiescence than strictly under the rules on change of venue.

Plaintiffs initially commenced the action in Van Buren County. The several defendants including the bank moved to change the place of trial on the ground of local prejudice. The district court sustained the motion but ordered that the papers not be transferred until a companion case against the state was tried. That case, however, was appealed and was not tried at any time during the pendency of this case prior to the present appeal.

The costs in the present case were not paid and the parties continued to file papers in Van Buren County with copies to the judge in Mahaska County. The court filed no less than sixty rulings in Van Buren County. Then, without any formalities that we can discover other than the filing in Monroe County of the papers from Van Buren County, we find the parties trying the case in Monroe County. We then find the parties and the court filing papers in Van Buren County and Monroe County, including the bank's post-trial motion in question filed in Van Buren County. From September 9, 1982, to December 8, 1982, which encompasses the time of trial, over forty filings were made in Van Buren County.

Plaintiffs moved to strike the bank's post-trial motion as filed in the wrong county. On November 24, 1983, the trial court overruled that motion and also the bank's post-trial motion. On December 21, 1983, the bank filed its notice of appeal.

We think the conduct of the parties and the court indicates that they regarded the case as pending in Van Buren County except for the trial itself, and that

the bank's post-trial motion was filed in Van Buren County on that basis. While closer observance of the formal rules of civil procedure would be preferable, we note the rule that venue is not ordinarily jurisdictional. 77 Am.Jur.2d *Venue* § 45, at 873 (1975) ("The principle that parties cannot, by concert or otherwise, give the court jurisdiction of a subject matter of which it would otherwise not have jurisdiction, is not applicable."); 92 C.J.S. *Venue* § 75 (1955) ("Generally, statutes with respect to venue are merely procedural, and are not jurisdictional in the strict sense."). We hold that because of the acquiescence of the parties and the court in the filing of papers in each county, the bank could file its post-trial motion in Van Buren County; that its notice of appeal was timely; and that we thus have jurisdiction of the appeal.

II. *Instructions.* In its marshaling instruction the trial court told the jury:

### INSTRUCTION NO. 14

The respective plaintiffs have the burden of proving by a preponderance of evidence which is clear, convincing and satisfactory evidence each of the following propositions as to defendant Mt. Pleasant Bank and Trust Company:

First, that Prairie Grain intended to defraud and did in fact defraud grain producers;

Second, that the Mt. Pleasant Bank and Trust Company had knowledge that Prairie Grain was defrauding grain producers;

Third, that the Mt. Pleasant Bank and Trust Company intended to defraud grain producers;

Fourth, that Mt. Pleasant Bank and Trust Company acted in concert with Prairie Grain to defraud grain producers;

Fifth, that the respective plaintiff(s) suffered loss(es).

Sixth, that the wrongful conduct of the defendant was a proximate cause of the respective plaintiff's losses.

You are to consider these six propositions in making your determination. If you find from your consideration of all the evidence that each of these six propositions have been proved, then the defendant, Mt. Pleasant Bank and Trust Company, is liable and your verdict should be for the respective plaintiff(s) and against the defendant, Mt. Pleasant Bank and Trust Company.

But if, on the other hand, you find from your consideration of all the evidence that any one of these six propositions have not been proved against the Mt. Pleasant Bank and Trust Company, then the Mt. Pleasant Bank and Trust Company is not liable and your verdict should be against the respective plaintiffs and for the Mt. Pleasant Bank and Trust Company.

Regarding certain statutes regulating banking, the court instructed:

### INSTRUCTION NO. 23

The laws of Iowa provide that prior to the extension of any credit to the director of a state bank, a majority of the board of directors, voting in the absence of the applying director, shall give its approval to such extension of credit.

The form of the approval shall be specified by the superintendent of banking, and a copy recorded in the minutes of the board of directors.

A party's failure to comply with this provision of law constitutes fraudulent practice.

### INSTRUCTION NO. 24

The laws of Iowa provide that the total obligations of a director to a state bank of which he is a director shall not exceed 20% of the capital and surplus of the state bank.

The total obligations of any one customer to a state bank at any one time for the purposes of applying the above limitations include overdrafts and liability for items paid by the state bank against uncollected deposits of the customer.

A party's failure to comply with this provision of law constitutes fraudulent practice.

### INSTRUCTION NO. 25

The laws of Iowa provided that no officer or employee of a state bank shall receive anything of value for procuring, or attempting to procure, any loan or extension of credit resulting, or which would result, in an, obligation, to the state bank.

A party's failure to comply with this provision of law constitutes fraudulent practice.

By exceptions, the bank adequately alerted the trial court to its objections to instructions 23, 24, and 25. We take up those instructions seriatim. Most of the considerations applicable to instruction 23 apply to 24 and 25 as well.

A. Instruction 23 is based on section 524.612(1) of the Iowa Code of 1981 which provides so far as pertinent:

A majority of the board of directors voting in the absence of the applying director, shall give its prior approval to any obligation, as defined in subsection 1 of section 524.904, of a director to the state bank of which he is a director. The form of such approval shall be specified by the superintendent, and a copy recorded in the minutes of the board of directors.

Section 524.1601(2) of the Code provides in pertinent part:

A director ... who willfully ... receives a loan in violation of subsection 1 of section 524.612 ... shall be guilty of a serious misdemeanor and ... shall be forever disqualified from acting as a director or officer of any state bank....

Apparently plaintiffs' claim is that the quoted portion of section 524.612(1) was violated by loans to Keller when he was a director and by the indirect loan of $10,000 to director Bontrager through Keller.

The bank's main objections to instruction 23 are twofold: the instruction erroneously tells the jury as a matter of law that a violation of the statute "constitutes fraudulent practice", and it does not have substantial evidentiary support in the record.

1. As to the bank's first objection, we approach the section of the banking statute from two standpoints: Would a statutory violation itself give plaintiffs a cause of action for a fraudulent practice? Would violation of the statute have a bearing on any of the elements of plaintiffs' common-law claim of a conspiracy to defraud?

We recently considered the first question in another context. *Seeman v. Liberty Mutual Insurance Co.*, 322 N.W.2d 35 (Iowa 1982). We held that in case of clear legislative intent to create or not to create a private cause of action for a statutory breach, we will hold accordingly and will not engage in further statutory construction. Otherwise we will employ, with one modification included in the following, the four-part test enunciated by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975): Is the plaintiff in the class for whose benefit the statute was enacted? Does any indication of legislative intent appear to create or not to create a private cause of action? Is implication of a private cause of action consistent with the legislative scheme? Will implication of a private cause of action intrude on exclusive jurisdiction of the federal government or a state administrative agency? *Cf.* Restatement (Second) of Torts § 874A (1979) ("When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.").

Section 524.612(1) is part of the Iowa Banking Act of 1969, now embodied in chapter 524 of the Iowa Code. Section 524.612(1) of the chapter regulates the

method of authorizing loans to bank directors. This provision protects banks from improvident loans to their own insiders, the directors. The bank, and the depositors, shareholders, and creditors of the bank who would be harmed by the bank's failure, receive protection against director misconduct. Normally the bank itself or its receiver would be the plaintiff seeking damages from the directors who breached the section regulating loans to directors. We do not now have such a case, and we do not venture an opinion whether breach of the section in question would itself give a bank or receiver a statutory cause of action against the malefactors.

The case before us is considerably different. Plaintiffs are not suing for the failure of the bank. They do not claim to be depositors, shareholders, or creditors. They are customers of a customer of the bank. Their damage flows from the failure of Prairie Grain. We conclude that the section in question does not itself give them a private tort action against the bank.

As to the second question, however, the conclusion just reached does not mean that violation of the section has no relevancy to any issue in plaintiffs' case. Plaintiffs contend that the principal owners of the bank were trying to dispose of their stock. The jury could find that through the bank's officers and employees the bank knew of Prairie Grain's precarious financial condition—receiving insufficient-funds checks; holding the books open until deposits were made; giving credit for checks on other banks before the checks were collected; lending large sums to Prairie Grain and to its manager and partial owner, Keller; giving Keller a position on the bank's board of directors and securing his subsequent resignation as director when convenience on loans so indicated; and allowing the double loan deal of $10,000 to Keller and Bontrager. In that setting, would the grant of loans to Keller and the roundabout loan to Bontrager without complying with section 524.612(1), if such is the fact, be relevant as to the real relationship between Prairie Grain and the bank through Keller and Bontrager, and as to the bank's knowledge and intent?

The heart of plaintiffs' case is conspiracy to defraud. An express agreement to defraud can seldom be shown; a conspiracy is normally established by circumstantial evidence. Courts are quite liberal in allowing proof of circumstances bearing on the question of whether a conspiracy did exist. *Stover v. Hindman,* 159 N.W.2d 422 (Iowa 1968); *Shannon v. Gaar,* 233 Iowa 38, 6 N.W.2d 304 (1943); 16 Am.Jur.2d *Conspiracy* § 68 (1979); 15A C.J.S. *Conspiracy* § 29, at 690 ("In general, in conspiracy cases, broad discretion and great latitude are permitted in the reception of evidence."), 693 ("The law permits great latitude in the admission of circumstantial evidence tending to establish a conspiracy...."). Similarly, liberality exists in the admission of evidence bearing on knowledge and intent, which constitute the gravamens of fraud. 37 Am.Jur.2d *Fraud and Deceit* § 450, at 618 (1968) ("Evidence covering a wide range is admissible to prove or disprove fraud when it is at issue."); 37 C.J.S. *Fraud* § 104 (1943) ("Where a question of fraud is involved, great latitude is ordinarily permitted in the introduction of evidence....").

We think that bank loans to Keller and to Bontrager by improper means, if such is the fact, would be admissible as part of the overall manner in which Prairie Grain and the bank operated inter se, bearing on the bank's participation with Prairie Grain in the acquisition of farmers' grain and its knowledge and intent with respect to that acquisition.

The problem is that the trial court did not submit consideration of the evidence that way in instruction 23. In its marshaling instruction, the court stated plaintiffs had to prove inter alia that the bank acted in concert with Prairie Grain to defraud the farmers. Then in instruction 23 it stated as a matter of law that failure to comply with the statutory mode of lending to a director "constitutes fraudulent practice." Instead of this fraud per se

approach, the court should have stated that failure to comply with the statute would not in and of itself establish a conspiracy to defraud. The court should have further stated in substance that in finding whether the bank participated with Prairie Grain in a conspiracy to defraud plaintiffs, violation of the statute, if established, would be a circumstance that the jury could consider with the other evidence for the bearing the jury deemed it would have, if any, on the nature of the relationship between the bank and Prairie Grain and on the bank's knowledge and intent with respect to Prairie Grain's acquisition of plaintiffs' grain. The instruction given by the court was erroneous and requires a new trial.

2. The bank also argues that plaintiffs did not introduce substantial evidence of a violation of section 524.612(1). We have examined the record and agree with the bank. To bring this subject into the case on retrial, plaintiffs will have to introduce substantial evidence of a violation of each of the elements of the section as we have previously quoted it. Notwithstanding this failure of proof at the first trial, we have considered instruction 23 because the case must be retried in any event.

B. Similar considerations exist with respect to instructions 24 and 25. Instruction 24 is based on sections 524.612 and 524.904 of the Code, with the penalty provision in section 524.1602(4). Instruction 25 is based on section 524.710. The penalty provision in this instance is section 524.1601(1). The court should not have instructed in effect that violations of these sections constituted fraud per se. As with instruction 23, these violations, if established, would be circumstances in the record which the jury could consider on the nature of the relationship between the bank and Prairie Grain and on the bank's knowledge and intent regarding Prairie Grain's acquisition of plaintiffs' grain. Again substantial evidence of each element will of course be required to bring these claimed violations into the case.

III. *Damages.* As retrial is necessary, no necessity exists to consider each assignment of error respecting damages. Several of the assignments are well taken. Two problems exist in the proof. One problem is that the plaintiff named in each of some claims is one person or corporation while the proof, such as exists, relates to a different name. These shortcomings must be overcome with substantial evidence on retrial in accordance with our rules on parties. *Burg v. Bryant*, 264 N.W.2d 750 (Iowa 1978); *Reynolds v. Nowotny*, 189 N.W.2d 557 (Iowa 1971); *Thune v. Hokah Cheese Co.*, 260 Iowa 347, 149 N.W.2d 176 (1967); *see Jontz v. Mahedy*, 293 N.W.2d 1 (Iowa 1980). Obviously if a plaintiff named in the case is one individual and the plaintiff before the court is another individual or corporation, the latter individual or corporation cannot recover in the absence of an assignment or grounds for disregarding the corporate entity. *Hickman v. Hygrade Packing Co.*, 185 N.W.2d 801 (Iowa 1971).

The other problem relates to the amounts of damages. Two kinds of claims exist, those for grain sold and those for grain stored. In some instances the price of grain sold was not shown. On retrial, substantial evidence of price must be introduced as to a claim or the claim may not be submitted. Similarly, the value of stored grain converted by Prairie Grain must be established in each instance as of the appropriate time in order to apply the proper measure of damages. *Ontario Livestock Commission Co. v. Flynn*, 256 Iowa 116, 126 N.W.2d 362 (1964); *Doyle v. Burns*, 123 Iowa 488, 99 N.W. 195 (1904); *Merchants Mutual Bonding Co. v. Madison*, 242 F.Supp. 465 (S.D.Iowa 1965).

IV. We return the consolidated cases to district court for a new trial on all issues.

REVERSED.