ROLIN MANUFACTURING, INC., Plaintiff and Appellant,

v.

Jim MOSBRUCKER and Bank Center First, Defendants and Appellees.

Civil No. 950107.

Supreme Court of North Dakota.

Feb. 28, 1996.

---

John J. Gosbee (argued), Mandan, for plaintiff and appellant. Appearance by Ray Olin, President of Rolin Manufacturing, Inc.

Ralph A. Vinje (argued), Bismarck, for defendant and appellee Jim Mosbrucker.

Albert A. Wolf (argued), of Wheeler Wolf, Bismarck, for defendant and appellee Bank Center First.

NEUMANN, Justice.

Rolin Manufacturing, Inc. [Rolin], appealed from judgments dismissing its amended complaint against Jim Mosbrucker and Bank Center First [the Bank] under Rule 12(b)(v), N.D.R.Civ.P., for failure to state a claim upon which relief can be granted. We affirm in part, reverse in part, and remand.

In 1993, Rolin filed a twelve-page amended complaint against Mosbrucker and the Bank alleging that, on January 21, 1993, Mosbrucker tendered to Rolin three checks (for $5,000.00, $3,396.75 and $3,396.75) to pay for a trailer and for work done on rodeo equipment; the checks were drawn on Mosbrucker's account at the Bank; Mosbrucker promised there would be sufficient funds in the account to pay the checks when presented after his next two rodeos; Rolin relied on Mosbrucker's promises as Mosbrucker intended; and that, upon presentation, the checks were returned by the Bank for NSF.[1] The complaint also alleged that Mosbrucker did not disclose he was a debtor in a Chapter 12 bankruptcy case and had been a debtor in another Chapter 12 case that was eventually dismissed; that the approved plan for Mosbrucker's Chapter 12 case contained no pro-

---

1. The $5,000 check was eventually paid, but the others remain unpaid.

vision for payment of the checks to Rolin; that Mosbrucker was convicted of the crime of issuing an NSF check; that Mosbrucker was convicted of the crime of removal of livestock from the state without brand inspection; that there were numerous outstanding and unsatisfied judgments against Mosbrucker; that at least two unsatisfied judgments for conversion had been adjudicated nondischargeable in bankruptcy; and that since Mosbrucker issued the checks to Rolin, another unsatisfied judgment for conversion has been entered against Mosbrucker.

The complaint also alleged that in the fourteen months before the three checks were issued, 115 checks drawn on Mosbrucker's checking accounts with the Bank were returned for NSF and that 619 other overdraft checks were honored by the Bank, resulting in overdraft fees of $8,357; from the time Mosbrucker tendered the three checks to Rolin until mid-May 1993, Mosbrucker issued 31 more NSF checks and 687 more overdraft checks, resulting in additional overdraft fees of $10,635 and that Mosbrucker continues the pattern of NSF checks and overdrafts. The complaint further alleged that Mosbrucker's actions constituted the crime of defrauding a secured creditor, which is punishable by imprisonment for more than one year; that the acts leading to the conversion judgments constituted the crime of fraud, punishable by imprisonment for over one year, at least one of which occurred after July 8, 1987; that "Several officers and employees" of the Bank "were sufficiently aware of Mosbrucker's activities, including his commission of the crimes that led to the conversion judgments, to have condoned or ratified" his activities; that Mosbrucker's actions "constitute a pattern of racketeering activity as described in NDCC Ch. 12.1–06.1;" and that Mosbrucker "illegally controlled or conducted a criminal enterprise, especially one fed and supported by his pattern of NSF and overdraft checks." Finally, the complaint alleged:

"40. The actions of [the Bank], based on the knowledge of its officers and employees had to have had of Mosbrucker's activities, constitute a combination as described in NDCC Ch. 12.1–06.1.

"41. Persons in commerce, and Rolin in particular, rely on the existence of a checking account as some indicia that the financial institution, by allowing the checking account to remain open, is not aware of a longstanding pattern of activity by the depositor that makes reliance on the depositor's checks unwise and dangerous to the payee.

"42. [The Bank] knew or should have known that, by allowing Mosbrucker to continue to present checks drawn on [the Bank], innocent people would be lulled into a false sense of security that Mosbrucker was honest, or at least had not engaged in a longstanding history of writing NSF checks.

"43. Because of its intimate connection with Mosbrucker's business affairs and its knowledge of Mosbrucker's history of NSF checks, [the Bank] was a partner by estoppel with Mosbrucker in his enterprises."

The complaint sought "judgment in the amount of $6,793.50, with interest from the date of the Rolin checks," "damages arising from Mosbrucker's willful and fraudulent misrepresentations in an amount of at least $50,000.00," "treble damages and attorney's fees under NDCC Ch. 12.1–06.1," and "judgment of joint and several liability against both Mosbrucker and [the Bank] on all counts."

The trial court granted the defendants' motions to dismiss under Rule 12(b)(v), N.D.R.Civ.P., for failure to state a claim upon which relief can be granted. Rolin has raised a number of issues on appeal.

■ In determining a motion to dismiss under Rule 12(b)(v), N.D.R.Civ.P., the court's scrutiny of the complaint is fairly relaxed and deferential to the pleader. A complaint should not be dismissed under Rule 12(b)(v), N.D.R.Civ.P., for failure to state a claim upon which relief can be granted, unless it appears beyond doubt that the plaintiff can prove no facts which would entitle him to relief. *Varriano v. Bang*, 541 N.W.2d 707 (N.D.1996). On appeal, we view the com-

plaint in the light most favorable to the plaintiff. *Id.*

█ The complaint alleges that Mosbrucker gave Rolin three checks as payment for a trailer and rodeo equipment repairs, and that two of the checks were returned NSF and have never been paid, for which Rolin seeks damages of $6,793.50. Viewing the complaint in the light most favorable to Rolin and accepting the well-pleaded allegations as true, the complaint does state a claim for the unpaid value of the goods and services Rolin provided Mosbrucker in the amounts promised in the unpaid instruments. Therefore, we agree with Rolin that the district court erred in entirely dismissing the complaint against Mosbrucker.

Rolin contends the complaint also states a claim for deceit under § 9–10–03, N.D.C.C. Deceit is defined by § 9–10–02, N.D.C.C.:

"1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

"2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

"3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

"4. A promise made without any intention of performing."

█ Rolin's complaint alleges Mosbrucker promised there would be sufficient funds in his account to honor the checks when presented after his next two rodeos; Rolin relied on the promise, as Mosbrucker intended; Mosbrucker was a debtor in a Chapter 12 bankruptcy case when the checks were issued; Mosbrucker had liabilities of almost $900,000; Mosbrucker anticipated disposable income of $11,610 in 1992; Mosbrucker knew it was impossible to comply with his Chapter 12 plan and pay the checks. Viewing the complaint in the light most favorable to Rolin and accepting the well-pleaded allegations as true, we agree that Rolin's complaint states a claim against Mosbrucker for deceit.

The complaint also alleges Mosbrucker issued a large number of NSF checks and a large number of overdraft checks which were paid, but which resulted in substantial overdraft charges. Rolin contends the complaint states a negligence claim against the Bank for failure to close Mosbrucker's account, arguing that people "rely on the mere existence of a checking account as some indicia of financial responsibility" and that the Bank should have closed Mosbrucker's checking account when it "became aware of Mosbrucker's extraordinary history of writing bad checks."

█ Rolin has not cited any authority for the proposition that a bank has a duty to close the account of a prolific writer of NSF or overdraft checks. Banks generally are under no duty to warn others of the financial condition of their depositors. *Cunningham v. Merchants' Nat'l Bank*, 4 F.2d 25 (1st Cir.1925); 5A *Michie on Banks and Banking*, § 11 (1994 Repl.Vol.).

"Despite any prior course of dealings between the parties, a bank retains discretion to honor or dishonor a check that creates an overdraft. In exercising its discretion, a bank makes a business decision that typically turns on factors such as the size of the overdraft and the bank's opinion of its customer."

*Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 761 F.Supp. 1010, 1021 (S.D.N.Y. 1991). "When a bank honors a customer's overdraft, it makes an unsecured loan to that customer, and thus, absent an agreement to the contrary, a bank need not honor a customer's overdrafts even if it had previously done so." *Thiele v. Security State Bank*, 396 N.W.2d 295, 298 (N.D.1986). A "bank is generally not liable to the holder [of a check] unless and until it accepts or certifies the check." *Torkelson v. Bank of Horton*, 208 Kan. 267, 491 P.2d 954, 957 (1971). A bank generally has no duty to disclose a customer's financial condition, but a duty to give full, accurate and truthful information may arise if a bank responds to an inquiry about a customer's credit status or if there is a fiduciary relationship. *First Nat'l Bank & Trust Co. v. Brakken*, 468 N.W.2d 633 (N.D.1991); *Ostlund Chem. Co. v. Norwest Bank*, 417 N.W.2d 833, 836 (N.D.1988).

In *Hellman v. Thiele*, 413 N.W.2d 321 (N.D.1987), persons who sold cattle to Thiele received checks that were ultimately unpaid:

"They allege that the Bank engaged in a pattern of paying Thiele's overdrafts, knowing Thiele was insolvent, in an effort to keep the business afloat long enough for the Bank to become fully secured on its various loans to Thiele.... [T]he Bank ... abruptly quit paying Thiele's overdrafts, leaving them holding approximately $447,000 of worthless checks drawn on Thiele's account."

*Id.* at 322–23.

"The plaintiffs contend that they were the intended third-party beneficiaries of a contract between the Bank and Thiele whereby the Bank agreed to pay all of Thiele's overdrafts."

*Id.* at 324.

"It is clear that the contract, if any, was for the primary benefit of the Bank and Thiele, and any benefit flowing to those third parties who were payees on Thiele's checks was purely incidental. We conclude that the trial court did not err in granting summary judgment on this issue."

*Id.* at 325.

"Because the plaintiffs have failed to establish that the Bank had a duty to inform them of Thiele's financial condition, we conclude that the trial court did not err in granting summary judgment dismissing the deceit claims of those plaintiffs who had no communication with the Bank."

*Id.* at 329.

■ Rolin has not shown that the Bank had a duty to close Mosbrucker's checking account because he wrote NSF or overdraft checks. Rolin has not alleged it communicated with the Bank about Mosbrucker's credit status before accepting Mosbrucker's checks in payment for goods and services, or that there was a fiduciary relationship with the Bank. Therefore, we conclude the complaint did not state a negligence claim against the Bank upon which relief can be granted.

■ Rolin contends its complaint stated a claim against the Bank because there was a partnership by estoppel between the Bank and Mosbrucker. We disagree. Section 45–06–08, N.D.C.C., states the requirements for one to be a partner by estoppel:

"When a person ... represents himself, or consents to another representing him to anyone, as a partner ... with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership."

The complaint alleged that the Bank was "sufficiently aware of Mosbrucker's activities ... to have condoned or ratified" them, that a Bank official told Rolin the "checks would be honored if enough funds were in the account," that the Bank "allow[ed] the checking account to remain open," and that the Bank, "[b]ecause of its intimate connection with Mosbrucker's business affairs and its knowledge of Mosbrucker's history of NSF checks, [ ] was a partner by estoppel with Mosbrucker in his enterprises." One's knowledge of another's business activities or history of writing NSF checks does not create a partnership by estoppel. The complaint does not allege that the Bank represented itself as Mosbrucker's partner or consented to another's such representation. We, therefore, conclude the complaint does not state a claim upon which relief can be granted for liability of the Bank as a partner by estoppel of Mosbrucker.

Rolin contends the complaint stated a claim for which relief could be granted under our RICO (Racketeer Influenced and Corrupt Organizations) law, Ch. 12.1–06.1, N.D.C.C. Section 12.1–06.1–05(1), N.D.C.C., provides, in part:

"A person who sustains injury to person, business or property by racketeering activity or by a violation of section 12.1–06.1–03 may file an action in district court for the recovery of treble damages and the costs of the suit, including reasonable attorney fees."

Section 12.1–06.1–03, N.D.C.C., prohibits illegal control of an enterprise if acquired or maintained through racketeering or its proceeds, and prohibits illegally conducting or participating in the conduct of the enter-

prise's affairs through racketeering. Section 12.1–06.1–01(2), N.D.C.C., provides a number of relevant definitions:

"a. 'Control' means the possession of a sufficient interest to permit substantial direction over the affairs of an enterprise.

"b. 'Enterprise' means any corporation, limited liability company, association, labor union, or other legal entity or any group of persons associated in fact although not a legal entity.

\* \* \*

"e. 'Racketeering' means any act ... committed for financial gain, which is chargeable or indictable under the laws of the state in which the act occurred and, if the act occurred in a state other than this state, would be chargeable or indictable under the laws of this state had the act occurred in this state and punishable by imprisonment for more than one year, regardless of whether such act is charged or indicted, involving:

\* \* \*

"(15) Fraud."

■■■■■ "[T]o state a cause of action for civil damages under RICO, the plaintiff's damages must be proximately caused by the defendant's violation of a predicate RICO act." *Rosier v. First Financial Capital Corp.*, 181 Ariz. 218, 889 P.2d 11, 15 (Ariz. App.1994). A RICO claim must "be pled with the same particularity that is required in the pleading of fraud. Fed.R.Civ.P. 9(b)." *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 682 (N.D.Ga.1983). "[T]hat essentially means only that you must plead dates, times, and places of the fraudulent statements, and who made them." David G. Duggan, *Pleading a RICO claim*, Ill. Bar J. 454, 457 (Sept. 1990). "Further, it is noted that the predicate acts must be criminal acts. 18 U.S.C. § 1961(1). Characterizing some event as criminal does not make it so.... Therefore, it is necessary that either a prior conviction or probable cause be alleged with reference to the predicate acts." *Taylor v. Bear Stearns & Co.*, 572 F.Supp. at 682–83. "A necessary ingredient of every successful

RICO claim is an element of criminal activity." *Babst v. Morgan Keegan & Co.*, 687 F.Supp. 255, 258 (E.D.La.1988). "[C]ivil RICO requires that the defendant's state of mind be the same as that required in a criminal prosecution." *Id.* "The pattern of racketeering activity requires proof of two related predicate criminal acts." *Stiller v. Sumter Bank and Trust Co.*, 860 F.Supp. 835, 839 (M.D.Ga.1994).

■■■■■ Rolin alleged that Mosbrucker committed two acts of conversion, which were criminally fraudulent. It also asserts Mosbrucker's acts criminally defrauded it as a creditor by inducing it with bad checks to relinquish possession of the trailer it sold to Mosbrucker and the equipment it worked on and that the Bank, which was a bankruptcy creditor of Mosbrucker's, knew of Mosbrucker's check-writing history. The complaint does not plead dates, times, and places of fraudulent statements. It characterizes some events as criminal, but does not allege any relevant convictions or probable cause. It does not allege a crime by the Bank. The complaint does not plead criminal activity with the particularity required to support a RICO claim. *See* Rule 9(b), N.D.R.Civ.P.

■■■■■ The district court determined that, as to the Bank, Rolin's amended complaint was "a frivolous pleading upon which no reasonable attorney could have expected judgment in his client's favor," and awarded the Bank attorney fees of $1000 and costs of $50. Rolin contends the district court's action was inappropriate. Section 28–26–01, N.D.C.C., authorizes a court to award reasonable costs and reasonable attorney fees to the prevailing party upon finding that a claim for relief was frivolous. An award of costs and attorney fees under § 28–26–01, N.D.C.C., lies within the discretion of the trial court. *Peterson v. Zerr*, 477 N.W.2d 230 (N.D.1991). While "[a]uthorizations of attorney's fees for frivolous claims are not meant to chill enthusiasm and creativity in pursuing factual or legal theories" [*Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73, 84 (N.D.1991) ], we do not believe the trial court abused its discretion.

On July 31, 1992, Rolin's counsel, without notice to Mosbrucker, as required by Rules 45(e) and 30(b), N.D.R.Civ.P., issued a subpoena to the Bank, which was not then a party, for records and documents pertaining to Mosbrucker. The trial court quashed the subpoena and ordered Rolin's counsel to pay Mosbrucker $250 for "the irregular use of the subpoena duces tecum." Rolin's counsel contends the trial court erred in assessing the $250 and in not staying its order pending resolution of the case.

When Rolin's counsel issued the subpoena, Rule 45(e), N.D.R.Civ.P., provided that a subpoena could only be issued at or after service of notice to take a deposition as provided in Rule 30(b), N.D.R.Civ.P., which required written notice to every other party to the action. An attorney could not issue a subpoena duces tecum to a nonparty without conducting a deposition,[2] with notice to the other parties. Rolin's counsel signed the subpoena. Rule 26(g), N.D.R.Civ.P., provided that an attorney's signature "constitutes a certification that the signer has read the request ... and that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is: (i) consistent with these rules." Service of a subpoena duces tecum apart from a deposition and without written notice to the other parties was not "consistent with these rules." "The sanctions to be imposed are left to the court's discretion." 4 *Moore's Federal Practice* ¶ 26.35, p. 26–430 (1994) (commenting on Rule 26(g), F.R.Civ.P., from which our rule was drawn). *See also Coleman v. American Red Cross*, 979 F.2d 1135, 1140 (6th Cir.1992) ("Since the district court has broad discretion to enforce its discovery orders, we review sanctions for abuse of discretion."). We conclude that the trial court did not abuse its discretion in imposing the $250 sanction or in refusing to stay its order pending resolution of the case.

The judgment dismissing the complaint against the Bank is affirmed. The judgment dismissing the complaint against Mosbrucker is reversed and the matter is remanded for further proceedings in accordance with this opinion.

VANDE WALLE, C.J., and LEVINE, SANDSTROM and MESCHKE, JJ., concur.

---

**2.** Effective January 1, 1995, Rule 45, N.D.R.Civ. P., was amended to allow the issuance of a subpoena to "compel a non-party to produce evidence independent of any deposition." Explanatory Note, Rule 45, N.D.R.Civ.P.