plaintiff on plaintiff's Title VII claims set forth in Counts I and II of plaintiff's complaint in accordance with the accompanying memorandum.

IT IS FURTHER ORDERED that defendant's motion to enforce settlement is GRANTED in accordance with the terms set forth in the accompanying memorandum.

IT IS FURTHER ORDERED that defendant's motion for attorney's fees is DENIED as the Court does not find that plaintiff's action was so frivolous or without foundation as to entitle defendant to an award of such fees. *American Family Insurance Co. v. Teasdale*, 733 F.2d 559 (8th Cir.1984).

## In re NORTH DAKOTA PERSONAL INJURY ASBESTOS LITIGATION NO. 1 [1].

Civ. Nos. A1–89–098 to A1–89–138, A1–89–145 and A1–89–146.

United States District Court,
D. North Dakota,
Southwestern Division.

May 17, 1990.

---

**1.** This case was known generally as *Adolf v. A.P.I., Inc.* until consolidated into the current master docket. For a complete listing of all of the individual parties and their counsel involved, *see Adolf v. A.P.I., Inc.*, 726 F.Supp. 764, 764–67 (D.N.D.1989).

David C. Thompson, Fargo, N.D., for plaintiff.

Jacqueline A. Gaddie, Arndt & Benton, P.A., Minneapolis, Minn., for Eagle–Picher.

Ronald H. McLean, Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, N.D., and Ralph Walker, Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, Iowa, for Armstrong World Industries, Flexitallic Gasket Co., GAF Corporation, A.P. Green Refractories, Keene Corp., National Gypsum, Turner Asbestos Fibres,

Turner & Newall PLC, U.S. Gypsum and Union Carbide Corp.

Douglas R. Herman, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, N.D., for Grant Wilson, Inc.

Richard N. Jeffries, Jeffries, Olson & Flom, P.A., Moorhead, Minn., for SEPCO Corp.

Susan M. Hansen, Robert D. Brownson, Stich, Angell, Kreidler & Muth, P.A., Minneapolis, Minn., for Asbestos Products Mfg., Asbestos Corp., Spraycraft and H & A Const. Corp.

Daniel Hovland, Steven A. Storslee, Fleck, Mather, Strutz & Mayer, Ltd., Bismarck, N.D., for W.R. Grace & Co.

Gerald Haga, Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Ltd., Grand Forks, N.D., for Crane Packing Co.

Patrick J. Mastel, Morley & Morley, Ltd., Grand Forks, N.D., for Garlock, Inc.

Jon P. Parrington, Joel Muscoplat, Pustorino, Pederson, Tilton & Parrington, Minneapolis, Minn., for MacArthur Co.

Robert S. Cragg, Cragg & Fobbe, Hopkins, Minn., for A.P.I., Inc.

John P. Borger, Martin N. Burke, Faegre & Benson, Minneapolis, Minn., for Owens–Corning Fiberglas, CertainTeed Corp.

A. William Lucas, Lucas & Smith, Bismarck, N.D., for Building Sprinkler Co., Inc.

Duane A. Lillehaug, Colleen J. Saande, Dosland, Nordhougen, Lillehaug, Johnson & Saande, P.A., Moorhead, Minn., for U.S. Mineral Products Co.

Michael D. McNair, Lamb, McNair, Larson & Carlson, Ltd., Fargo, N.D., for Asbestos Corp., Atlas Turner, Inc.

Eugene D. Buckley, Collins, Buckley, Sauntry & Haugh, St. Paul, Minn., for Owens–Illinois, Inc., Fibreboard Corp. and Pittsburgh Corning.

Charles H. Becker, Meagher & Geer, Minneapolis, Minn., for A.H. Bennett Co. and S.O.S. Products Co.

B. Timothy Durick, Pearce & Durick, Bismarck, N.D., for Rutland Fire & Clay Co.

Jody D. Klask, Gary D. Sharp, Cheatham & Acker, Detroit, Mich., for H.K. Porter Co., Inc. and Southern Textile Corp.

Wayne A. Hergott, Moss & Barnett, Minneapolis, Minn., for Flintkote Co.

George W. Soule, Cynthia J. Atsatt, Bowman & Brooke, Minneapolis, Minn., for Hercules Chemical Co., Inc.

Michael G. Fiergola, Zuger, Kirmis, Bolinske & Smith, Bismarck, N.D., for Celotex Corp. and Carey Canada, Inc.

David Booth Beers, Elizabeth Runyon Geise, Shea & Gardner, Washington, D.C., for Cassiar Min.

Stephen W. Plambeck, Nilles, Hansen & Davies, Ltd., Fargo, N.D., for Empire Ace Insulation Mfg.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

### INTRODUCTION

Defendant Cassiar Mining Corporation filed a motion with this Court on January 4, 1990. In its motion, Cassiar requested the Court, "pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss the complaints against it for lack of personal jurisdiction." On February 2, 1990 this Court ordered filed Master Pretrial Order No. 1, consolidating cases A1–89–098 through A1–89–138, A1–89–145, and A1–89–146 into a master docket. After requesting and receiving additional time in which to reply to Cassiar's motion, plaintiffs filed a memorandum in opposition to dismissal for lack of personal jurisdiction on February 27, 1990. Cassiar filed an additional reply memorandum in support of its motion on April 18, 1990.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1441 (1990 Supp.), which provides for removal from state court for actions against a foreign state or political subdivision. 28 U.S.C. § 1441(d) affects all parties, and allows removal even if some of the defendants are of the same residence as the plaintiffs. Cassiar has claimed this Court lacks jurisdiction over its person, not that plaintiffs failed to serve it with notice of this litigation. The issue of personal jurisdiction has

already arisen and been ruled on in this case. *See Adolf v. A.P.I., Inc.,* 726 F.Supp. 764 (D.N.D.1989).[2] Plaintiffs have raised a new basis for asserting personal jurisdiction over certain foreign defendants; therefore a fresh look at the problem is necessary.

FACTS

Defendant Cassiar is a Canadian corporation. Cassiar's principal place of business is in Vancouver, British Columbia, Canada. Cassiar's sole interest since 1953 has been the mining of raw asbestos fibre in Canada. All the asbestos Cassiar mined was sold F.O.B. at shipping points in Canada. Cassiar claims that it never shipped, sold, or delivered asbestos to any person or entity in North Dakota.

Plaintiffs do not claim that Cassiar's allegations are untrue. Plaintiffs do assert, however, that Cassiar supplied vast amounts of raw asbestos fibres to various manufacturers of finished asbestos products, including Fibreboard Corporation; H.K. Porter Co., Inc.; Johns–Manville Sales Corp.; and Raybestos–Manhattan (Raymark). Plaintiffs assert that they or their decedents were exposed to or used these manufacturers', among others, finished asbestos products. Plaintiffs also claim that Cassiar was a participant in a civil conspiracy to deceive the general public about the health risks associated with asbestos.

Accompanying plaintiffs' memorandum were several hundred pages of documents supporting their contentions. These were organized as Appendices "A" through "L." While the documents are too numerous to list in detail, a brief summary of what this Court's examination found will explain the basis for the jurisdictional ruling.

Appendix "A" contained a work history of every plaintiff. This work history included all dates known where a given plaintiff worked with asbestos, and the nature of the jobs performed. The work history also noted the specific asbestos products with which that plaintiff remembers having worked.

Appendix "B" was made up of copies of the answers of co-defendants Raymark, Fibreboard Corporation, and H.K. Porter to plaintiffs' interrogatories. Pertinent factual information contained in these includes products these defendants manufactured and lists of suppliers from whom they purchased raw asbestos. The source of asbestos includes defendant Cassiar. The manufacturers also listed those asbestos products they sold to North Dakota businesses and their activities in North Dakota.

Appendix "C" consisted of a copy of the minutes of the Asbestos Textile Institute (A.T.I.) for a meeting held June 4 to 7, 1956. Among the members listed attending were Cassiar, Johns–Manville Corp. of Canada, Johns–Manville Corp., Raybestos–Manhattan, and Southern Asbestos Co. (later H.K. Porter). At this meeting the Air Hygiene Committee discussed links between cancer, asbestosis, and asbestos fibres and dust. The Air Hygiene Committee discussed a copy of a report it had commissioned from the Industrial Hygiene Foundation regarding links between asbestos and cancer.

Appendix "D" is also a copy of A.T.I. minutes, these dated June 12, 1970. Cassiar is again in attendance, as are Canadian Johns–Manville; Lake Asbestos of Quebec, Ltd. (LAQ); Garlock, Inc.; H.K. Porter; and Raybestos–Manhattan. A company officer from Cassiar gave a talk about a new asbestos mine, which concluded with a film showing how its asbestos was shipped from Vancouver to "25 countries on five continents." The A.T.I. discussed government programs designed to punish those who misrepresent the safety of goods manufac-

---

**2.** Cassiar submits another case involving Lavonne Matthews, one of the plaintiffs in the present case. This case was *Matthews v. Asbestos Corporation of America, et al.,* Civil No. 87–2028, slip op. East Central Judicial District for Cass County (Jan. 3, 1990). In his order, Judge LeClerc dismissed against Ms. Matthews without prejudice for lack of personal jurisdic-

tion. Under ordinary principles of comity, I would use *res judicata* to preclude Ms. Matthew's claim here, since there is no evidence of an appeal. Since there is no showing that the claim of conspirator jurisdiction was raised before Judge LeClerc, and the dismissal was without prejudice, I must consider the new Matthews claim.

tured and sold, new safety requirements concerning asbestos, and new booklets the A.T.I. was considering publishing about asbestos.

Appendix "E" is A.T.I. minutes from October 8, 1971. Cassiar is again in attendance. Publication of A.T.I. booklets about asbestos was discussed, as were potential problems with new O.S.H.A. safety requirements.

Appendix "F" is a copy of an order of this Court holding that circumstantial evidence can be used to show conspiracy, and that conspiracy exists as a cause of action in North Dakota. Appendix "G" is a copy of an order from the British Columbia Court of Appeals allowing a conspiracy cause of action. Appendix "H" is a copy of a 1988 opinion by Judge Devitt denying a motion by an asbestos defendant for summary judgment under a theory of conspiracy under Minnesota law. Appendices "I," "J," and "K" are also federal cases refusing to grant defense motions for summary judgment on the issue of civil conspiracy.

Appendix "L" contains portions of Barry I. Castleman's book, *Asbestos: Medical and Legal Aspects* (2d ed. 1986). In his book, Castleman cites certain portions of A.T.I. minutes that he claims show an agreement on the part of A.T.I. members to conceal the true risks of asbestos from the general public. The A.T.I. meeting minutes cited include those submitted by plaintiffs in appendices "C," "D," and "E."

Accompanying its response brief, defendant Cassiar filed several appendices of its own. These included two North Dakota district court cases dismissing out-of-state asbestos mines for want of personal jurisdiction, two District of Columbia Superior Court cases doing the same, and copies of the minutes of two separate A.T.I. meetings. Also submitted was an affidavit of David J. Elgee, corporate counsel of Cassiar. Elgee states that while Cassiar was a member of the A.T.I., it denies involvement in a conspiracy to suppress the potential hazards of asbestos from the general public.

The material submitted by plaintiffs in their appendices "A" and "B" are almost identical to that submitted by co-defendant and asbestos mine operator LAQ. *See Adolf v. A.P.I., Inc.*, 726 F.Supp. 764, 767–68 (D.N.D.1989). Were this all plaintiffs submitted, this Court would have dismissed against Cassiar with little discussion. Since the Eighth Circuit rejects the stream of commerce theory of asserting personal jurisdiction over suppliers, plaintiffs' showing that Cassiar's product ended up in manufactured form in North Dakota would be irrelevant. *See id.* at 769–70 (citing *Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 43 (8th Cir.1988)). Plaintiffs claim, however, that personal jurisdiction exists over Cassiar via the theory of conspirator jurisdiction. As this issue has never been examined by the Eighth Circuit, this Court must explore the possibility that this theory would work to provide personal jurisdiction over Cassiar.

ISSUES

I. Personal jurisdiction considerations.

  A. Background.

  B. Eighth Circuit treatment.

II. Civil Conspiracy.

  A. Theories of recovery.

  B. Elements of conspiracy.

III. Conspirator jurisdiction.

  A. Conspirator theory of personal jurisdiction.

  B. Necessity of a *prima facie* case.

IV. Consequences for North Dakota asbestos litigation.

DISCUSSION

I. *Personal jurisdiction considerations.*

A court must have jurisdiction over a defendant's person, property, or the *res* that is the subject of the suit. C. Wright & A. Miller, 4 *Federal Practice and Procedure* § 1063 (1987). Absent this type of jurisdiction, a federal court may not proceed to a valid judgment. In the past, examinations of personal jurisdiction concentrated on a defendant's physical pres-

ence within a particular court's territorial jurisdiction. *Id.* In recent years, this has changed. Today, a plaintiff must show that a defendant has sufficient contacts with the forum so that plaintiff's suit against the defendant in that locale does not offend traditional notions of "fair play and substantial justice." *Id.* (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The issues before this Court can ultimately be condensed into one simple question: Is it fair to exert personal jurisdiction over defendant Cassiar? If the answer to this is "Yes," trial can proceed; if "No," Cassiar must be dismissed.

### A. Background.

Plaintiffs in the instant case are North Dakota residents, who claim that they were injured by exposure to asbestos products either through their jobs, or through the occupational exposure of their loved ones. Defendant Cassiar mines and sells raw asbestos fibres to manufacturers. Cassiar has neither sold products in North Dakota nor conducted any other business here itself. At common law, if defendants' persons or lands were not within the territory of a court's jurisdiction, that court could not exercise jurisdiction over those defendants' persons. C. Wright & A. Miller, 4 *Federal Practice and Procedure* § 1064 (1987). A necessary prerequisite to the validity of a judgment was a court's actual physical power over the defendant. *Id.* The territorial concept of personal jurisdiction emerged from this. *Id.* Unless a defendant was actually served with process within a court's territory or consented to the court's jurisdiction, it became the rule that that defendant could not be subjected to the jurisdiction of the court. *Id.*

Not surprisingly, many states became dissatisfied with such a limited means of exerting jurisdiction over out-of-state defendants. As society had become more complex, transportation and communication greatly improved. *Id.* § 1065. It became common to have a person or corporation present or working in a state for a period of time, and then leave the jurisdiction entirely. As the mobility of persons increased, the inadequacy of limiting personal jurisdiction to those situations in which an individual defendant could be personally served grew. State legislatures, seeking a solution that would allow their citizens the ability to redress their perceived wrongs in a convenient forum, passed "long-arm" statutes to achieve jurisdiction over out-of-state defendants.

Long-arm statutes first were used to allow a state's residents to assert jurisdiction over non-resident motorists who were involved in an accident within that state. *Id.* § 1068. As time passed, the usefulness of such statutes became apparent, and they were drafted in increasingly broad language. Statutes were drafted that extended jurisdiction over all persons conducting business within a state, and even to those who committed an act outside the jurisdiction that somehow had consequences within it. *Id.* North Dakota's long-arm statute reads in part,

RULE 4–PERSONS SUBJECT TO JURISDICTION—PROCESS—SERVICE

(b) *Jurisdiction of person*

(2) *Personal jurisdiction is based upon contacts.* A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's having such contact with this state that the exercise of personal jurisdiction over him does not offend against traditional notions of justice or fair play or the due process of law, under one or more of the following circumstances:

(A) Transacting any business in this state;

(B) Contracting to supply or supplying service, goods or other things to this state; [or]

(C) Committing a tort within or without this state causing injury to another person or property within this state.

Rule 4(b)(2) North Dakota R.Civ.P. The North Dakota Supreme Court has ruled that Rule 4 is to be exercised "to the fullest extent permitted by due process." *Hust v.*

*Northern Log, Inc.,* 297 N.W.2d 429, 431 (N.D.1980).

The due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties or relations." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1984) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945)). The due process clause requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472, 105 S.Ct. at 2182. By this requirement, the due process clause ensures a degree of predictability to the legal system. *Id.* This predictability allows defendants' primary conduct to be structured so as to gain some minimum assurance as to where that conduct will and will not render them liable to suit. *Id.*

Before a forum can assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, it must ensure that the "fair warning" requirement is satisfied. *Id.* The fair warning requirement is satisfied if the forum determines that two factors exist. First, the forum must decide that the defendant has "purposefully directed" his or her activities at residents of the forum. *Id.* Second, the litigation before the forum must "arise out of or relate to" those activities. *Id.* These factors, and indeed the entire personal jurisdiction examination, must be applied to the facts in a given case.

The Supreme Court has applied the fair warning requirement to find that a forum state does not exceed its powers under the due process clause when asserting personal jurisdiction over a manufacturer that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state and those products subsequently injure forum consumers. *Id.* at 472–73, 105 S.Ct. at 2181–82; (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980)). The Court has declined, however, to extend personal jurisdiction to those who supplied needed parts or commodities to the manufacturing corporation.[3] *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1986). In *Asahi,* the Supreme Court was faced with a Japanese supplier which sold valve assemblies that were ultimately used in tires sold in the United States. *Id.* at 105–06, 107 S.Ct. at 1029–30. The Japanese supplier had sold its valve assemblies to a tire manufacturer in Taiwan. *Id.* After an accident victim filed suit against the manufacturer alleging a defective product, the manufacturer filed a cross-complaint against the supplier. *Id.* at 106, 107 S.Ct. at 1030. The Supreme Court held that a supplier which knew its commodities would be incorporated into a product a manufacturer would place in the stream of commerce, did not, by its supply of commodities alone, have contacts sufficient to allow a forum state's exercise of personal jurisdiction. *Id.* at 108, 107 S.Ct. at 1031.

The difference between the degree to which a supplier and a manufacturer purposely direct their activities can be viewed as the key difference in the treatment of them. A forum may legitimately exercise personal jurisdiction over non-residents who purposefully direct activities toward forum residents. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). This exercise of personal jurisdiction is allowed because a state is seen as having a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Id.* Individuals who purposely derive benefits from their interstate activities cannot escape voluntarily assumed interstate obli-

---

**3.** For purposes of this opinion, the term "manufacturer" shall apply to those who place a finished product into the stream of commerce. A manufacturer expects its products to come into the hands of the public in virtually the same form they were in when they left the manufacturer's hands. A "supplier" will identify one who sells a manufacturer the commodities necessary to make its products.

gations by claiming Due Process Clause protection. *Id.* at 473–74, 105 S.Ct. at 2182–83.

The key to determining whether personal jurisdiction exists over a given defendant is to examine its "minimum contacts" in the forum state. *Id.* at 474, 105 S.Ct. at 2183. Defendants who purposefully avail themselves of the privilege of conducting activities in the forum state have established minimum contacts necessary for suit there. *Id.* at 474–75, 105 S.Ct. at 2183–84. These contacts cannot be "random," "fortuitous," or "attenuated." *Id.* at 475, 105 S.Ct. at 2183. Nor can they be based on the unilateral activity of another party or a third person. *Id.* Jurisdiction is proper only when the contacts proximately result from the defendant's own actions that create a substantial connection with the forum state. *Id.* Physical presence within the forum state, however, is not necessary. *Id.* at 476, 105 S.Ct. at 2184. When a commercial actor's efforts are purposefully directed toward residents of another state, an absence of physical contacts cannot defeat personal jurisdiction there. *Id.*

B. Eighth Circuit Treatment.

When determining the existence of minimum contacts, the Eighth Circuit requires the consideration of five factors:

1) The nature and quality of contacts with the forum state;
2) The quantity of these contacts;
3) The relationship between the contacts and cause of action;
4) The interest of the forum state; and
5) The convenience of the parties.

*Wines v. Lake Havasu Boat Mfg., Inc.,* 846 F.2d 40, 42 (8th Cir.1988). This test is not to be mechanically applied, but is to take into consideration the facts of each case. *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226 (8th Cir.1987). In such an application, the first three factors are of primary consideration, while the last two factors are only of secondary importance. *Id.*

■■■ In the Eighth Circuit, a plaintiff seeking to bring a defendant into court under a long-arm statute must state suffi-

cient facts to support a reasonable inference that such defendant can be subjected to jurisdiction within the state. *See Block Indus. v. D.H.J. Indus., Inc.,* 495 F.2d 256, 259 (8th Cir.1974). Plaintiffs seeking to predicate long-arm jurisdiction on the accrual of a tort action within the forum state need not make a full showing on the merits that the nonresident defendant committed the tort. *Id.* Plaintiffs must, however, make a prima facie showing to defeat a motion to dismiss for want of jurisdiction. *Id.* This prima facie showing must be tested by the affidavits and exhibits presented with the motions for and those in opposition to dismissal. *Id.* at 260.

■■■ Application of any long-arm statute requires considerations of convenience, fairness, and the avoidance of harassment. *Id.* Long-arm personal jurisdiction cannot be acquired against multiple third-party supplier defendants upon the mere possibility that one or more of them may have contributed to the defect or negligence which is the subject of the suit. *Id.* Personal jurisdiction can properly be asserted over a corporation not physically present in the forum state if another with sufficient minimum contacts is acting as its alter ego. *See Lakota Girl Scout Council, Inc. v. Havey Fund–Rais. Man., Inc.,* 519 F.2d 634, 637 (8th Cir.1975). If the corporation has an alter ego, its contacts are that corporation's and due process is satisfied. *Id.*

■■■ A federal district court may assert jurisdiction over a corporation when it has jurisdiction over its dominant shareholder by using the court's equitable power to pierce the corporate veil. *Id.* at 638. Similarly, long-arm derivative jurisdiction over a foreign parent corporation has been allowed where a subsidiary corporation had minimum contacts with the forum state. *Id.* Such a decision was based on the control and domination the foreign parent corporation exercised over its resident subsidiary. *Id.* The Eighth Circuit has observed that,

[a] corporation is not doing business in a state merely by the presence of its wholly owned subsidiary. However, the

fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation. *Even a non-owned corporation may act as agent for another corporation.* No all embracing rule has been laid down under which the relationship between two corporations may be determined. The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute.

*Id.* at 637. (Emphasis added.) Personal jurisdiction can thus be properly asserted over a corporation if another is acting as its alter ego, even if that alter ego is another corporation.

On the basis of Cassiar's own minimum contacts with North Dakota, this Court could not assert personal jurisdiction over it. Other members of the A.T.I. conducted extensive business in North Dakota. If their action can be imputed to Cassiar, personal jurisdiction could properly be maintained over it. This Court must therefore examine North Dakota's civil conspiracy law to determine if the A.T.I. or its members have acted in such a way as to become the alter ego of defendant Cassiar.

## II. *Civil conspiracy.*

Many advantages exist for a plaintiff who can establish the existence of a civil conspiracy. Co-conspirators share vicarious liability for concerted activity. W. Prosser, *The Law of Torts* § 46, p. 322 (5th ed. 1984). All who commonly plan to commit a tortious act, take part in it, or further it by cooperation, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the wrongdoer's acts done for their benefit, are equally liable. *Id.* Each conspirator is also liable for the acts of the others. *Id.* Before further discussion of just what actions may be imputed to a co-conspirator, this Court must determine how North Dakota law governs plaintiff's claims.

■ A civil conspiracy is a combination of two or more persons to accomplish by some concerted action some criminal or unlawful purpose, or some lawful purpose by criminal or unlawful means, to the injury of another. 16 Am.Jur.2d, *Conspiracy* § 49 (1979). A great deal of discussion has taken place concerning whether conspiracy is to be regarded as a separate tort in itself. W. Prosser, *The Law of Torts* § 46, p. 324 (5th ed. 1984). It has been expressed that the element of combination in certain types of conduct adds such a power of coercion or undue influence that it makes unlawful acts which one person alone could legitimately do. *Id.* The better view, however, maintains that mere agreement to do a wrongful act can never alone be a tort, whether or not it may be a crime. *Id.* One of the parties must commit some act in pursuance of the agreement that is itself a tort for civil conspiracy to exist. *Id.* "The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff." *Id.*

### A. Theories of recovery.

■ North Dakota recognizes the theory of civil conspiracy. *See Hellman v. Thiele,* 413 N.W.2d 321, 328 (N.D.1987). For a conspiracy to exist, however, there must be an underlying tort which the alleged conspirators agreed to commit. After a careful examination of plaintiff's claims, this Court finds that their charge of "fraudulent concealment/civil conspiracy" is in its essence concerned with the alleged suppression of information disclosing the health risks of asbestos. The plaintiffs claim that but for this suppression, they would not have been injured. As such, the cause of action is grounded not so much in fraud, but in what North Dakota recognizes as deceit. One who willfully deceives others with intent to induce them to alter their position to their injury is liable for any damages which they thereby suffer. N.D.C.C. § 9–10–03 (1989 Supp.). "Deceit" is defined by statute as:

**9–10–02. Deceit—Definition.** A deceit within the meaning of section 9–10–03 is:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it true;

3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

4. A promise made without any intention of performing.

N.D.C.C. § 9–10–02 (1989 Supp.). The tort plaintiffs claim Cassiar committed is best labeled deceit.

While plaintiffs also claim that false facts relating to the safety of asbestos were circulated, their main contention is that the A.T.I. suppressed knowledge of the dangers of asbestos. In North Dakota, parties are liable for nondisclosure only if they had a duty to disclose the true facts. *Hellman v. Thiele*, 413 N.W.2d 321, 326 (N.D.1987). That a plaintiff suffers a loss as a result of defendant's omission to act is not enough for plaintiff to recover damages. *Id.* That loss must also have been proximately caused by defendant's breach of a legal obligation owed to the plaintiff. *Id.*

In North Dakota a manufacturer of goods has a duty to use reasonable care in designing its products to protect users against unreasonable risks of harm while putting the product to any foreseeable use. *Johnson v. American Motors Corp.*, 225 N.W.2d 57, 65 (N.D.1974). A manufacturer also has a duty to give a reasonable warning of dangers inherent or reasonably foreseeable in using the goods in the manner specified. *Id.* Plaintiffs claim that the A.T.I.'s concerted action to suppress information concerning the health risks of as-

bestos deprived them of a warning about these dangers. The manufacturers had a duty to give such a warning if they knew of the dangers themselves. As such, the duty becomes a function of a fiduciary relation the manufacturer owes the consumer. *See* M. Shapo, *The Law of Products Liability* ¶ 2.02[2] (1987).[4] A deceit of the type claimed by plaintiffs is actionable under North Dakota law. Deceit is the type of tort that can underlie a civil conspiracy charge. Further examination of plaintiffs' conspiracy charge is necessary before this Court can rule on the allegation of conspirator jurisdiction.

**B. Elements of conspiracy.**

Plaintiffs claim that by conspiring together, Cassiar and the other A.T.I. members served as the agents and alter egos of each other. Before such a determination can be made, the elements of civil conspiracy must be examined to see whether one existed. The elements of civil conspiracy have been defined as:

1) Two or more persons, and for this purpose a corporation is a person;

2) An object to be accomplished;

3) A meeting of minds on the object or course of action;

4) One or more unlawful or overt acts; and

5) Damages as the proximate result thereof.

*Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 51 (10th Cir.1963). If plaintiffs can show facts to satisfy each element of civil conspiracy, they have made a prima facie case showing the necessity for this Court to consider their claim of conspirator jurisdiction.

The Asbestos Textile Institute was a trade organization for the manufacturers of asbestos products. Plaintiffs have submitted extensive affidavits in support of

---

**4.** Professor Shapo's treatise is an excellent starting place for research in the area of complex products liability litigation. It offers a clear examination of many of the issues which are often confused in such cases. Shapo notes, for example, the necessity of "scienter" in fraud or deceit cases. *Id.* Some courts have approved findings of fraud or deceit where the seller or

promoter had no knowledge their assertions were false. *Id.* This view is properly referred to as Shapo as "Draconian" because of its characterization of good faith as fraud. *Id.* Where an alleged civil conspiracy is grounded in deceit or fraud, the court must be vigilant in the requirement of scienter.

their opposition to defendant Cassiar's motion for dismissal for want of personal jurisdiction. Included in these are the minutes of several of the A.T.I.'s committee meetings held between 1956 and 1971. These documents tend to show that the A.T.I.'s members were aware of the risks associated with asbestos products, and that they were concerned about unfavorable publicity if these risks became widely known. The minutes also tend to show that the A.T.I. refused to make such risks more widely known by declining to give warnings to the public either on their products or in their trade booklets.

Listed with Cassiar as alleged members of the conspiracy are the members of A.T.I., including Raymark, Fibreboard Corporation, and H.K. Porter Co. The first element, that there be two or more persons, is therefore satisfied. The object to be accomplished by the A.T.I. members was the promotion of asbestos products and the continued supply of adequate quantities of raw asbestos. These goals satisfy the second element that a common object to be accomplished exist.

The A.T.I. members also agreed not to fund studies to investigate reports that asbestos was dangerous. Advised that asbestos had been linked with cancer, the A.T.I. members feared further investigation would "stir up a hornet's nest and put the whole industry under suspicion." This Court finds that such group decisions tend to show a meeting of the minds and an agreement to accomplish the A.T.I.'s goal of suppressing information concerning the knowledge of the health risks of asbestos, thereby satisfying the third element. To satisfy the third element of civil conspiracy, all that is required is that there be a tacit understanding. W. Prosser, *The Law of Torts* § 46, p. 323 (5th ed. 1984). Express agreement is not necessary. *Id.*

As stated above, under North Dakota law manufacturers have an affirmative duty to warn consumers of the dangers and risks of their products. *Johnson v. American Motors Corp.*, 225 N.W.2d 57, 65 (N.D. 1974). Suppression of a fact by one who is bound to disclose it amounts to the tort of deceit in North Dakota. *See* N.D.C.C. § 9–10–02(3). Plaintiffs claim the A.T.I. members suppressed information about the health risks of asbestos from the public, information they were legally bound to disclose. The A.T.I. minutes tend to support the plaintiff's allegation. This unlawful act satisfies the fourth element of a civil conspiracy cause of action. The plaintiffs' medical bills and loss of income due to illness are damages that they claim result from their asbestos injuries. Damages such as these, which are the proximate result of the conspiracy, satisfy the fifth and final element of the cause of action. This Court therefore finds that plaintiffs have made a prima facie showing that Cassiar was a participant in a conspiracy with the other A.T.I. members to suppress information relating to the health hazards of asbestos.

III. *Conspirator jurisdiction.*

    A.   Conspirator theory of personal jurisdiction.

Plaintiffs ask this Court to assert personal jurisdiction over defendant Cassiar. Plaintiffs suggest that such an assertion could properly be made using the conspirator theory of personal jurisdiction. Defendant Cassiar maintains that the Eighth Circuit has not yet recognized this theory of asserting personal jurisdiction and that its previous rulings suggest the conspirator theory would be rejected. An examination of the law and the facts on this issue, however, suggest that this is not necessarily the case.

The theory of conspirator jurisdiction is, despite its exotic name, relatively simple. It allows a court to attribute the acts of a defendant to his co-conspirators for jurisdictional purposes if the plaintiff makes a prima facie showing of conspiracy. *Gudaitis v. Adomonis*, 643 F.Supp. 383, 385 (E.D. N.Y.1986). The Eighth Circuit has already decided that personal jurisdiction can properly be asserted over a corporation if another with sufficient minimum contacts acts as its alter ego. *Lakota Girl Scout Council, Inc. v. Havey Fund–Rais. Man., Inc.*, 519 F.2d 634, 637 (8th Cir.1975). De-

terminations concerning whether conspirator jurisdiction violates due process rights guaranteed by the constitution thus hinge on whether a co-conspirator acts as the alter ego of its co-conspirators.

Plaintiffs have presented a prima facie case showing that Cassiar was involved in a conspiracy with the other A.T.I. members to suppress the health risks of asbestos. Other members of the A.T.I., including Fibreboard Corporation, H.K. Porter, and Raymark, actively sold asbestos containing products in North Dakota. These products were known by the A.T.I. to be potentially dangerous to the general public. The products did not bear the warnings required by North Dakota law. Other research concerning the dangers of asbestos was concealed from the public.

The Eighth Circuit's five-part test for the existence of minimum contacts requires consideration of the facts of each case. *See Wines v. Lake Havasu Boat Mfg., Inc.,* 846 F.2d 40, 42 (8th Cir.1988). The A.T.I. members had extensive contacts with North Dakota, consisting of the sale and promotion of asbestos containing products. The continued promotion of asbestos products encouraged consumers to believe it was a safe product, even though the A.T.I. members knew this was not true. This promotion of unsafe products amounts to the tort of deceit under North Dakota law. The relationship between the contacts and the cause of action is thus strong, since the contacts essentially *are* the cause of action.

Cassiar was a member of the A.T.I. from 1954 until the A.T.I.'s dissolution in 1975. Plaintiffs worked during this period as pipefitters, boilermakers, millwrights, insulation workers, and ironworkers. The plaintiff's claim their work exposed them to asbestos and asbestos-containing products mined and manufactured by the A.T.I. members. Several family members claim they were exposed to asbestos by their family member's asbestos-contaminated clothing. The plaintiffs involved in this litigation are residents of North Dakota, most of whom also suffered their alleged injuries within its borders. The interest of the forum state in both providing a remedy for its residents and the convenience of the parties is, therefore, high.

Other courts have used the conspirator theory to assert personal jurisdiction over an out-of-state defendant. *See e.g., Wegerer v. First Commodity Corp. of Boston,* 744 F.2d 719, 727 (10th Cir.1984); *Gudaitis v. Adomonis,* 643 F.Supp. 383, 385 (E.D.N.Y.1986). In *Gudaitis,* Judge Nickerson was faced with a case where a New York plaintiff charged he had been fraudulently induced to marry by Massachusetts residents. Judge Nickerson found that one of the Massachusetts resident's acts of inducement in New York satisfied the "minimum contacts" between the other defendants and New York necessary to meet the due process test for personal jurisdiction. *Id.* at 385. Where all of the tortious acts alleged result from a conspiracy, once a prima facie showing of that conspiracy is made the acts of a defendant may be attributed to co-conspirators. *Id.*

As stated above, the issue of whether personal jurisdiction exists ultimately comes down to a question of fairness. Is it fair to assert personal jurisdiction over one who conspired to deprive forum residents of information necessary to protect themselves from a dangerous product? Is it fair to hold one responsible for a co-conspirator's actions that aid the conspiracy within the forum state? It is fair. Consequently, this Court finds it has personal jurisdiction over defendant Cassiar.

### B. Necessity of a prima facie case.

Plaintiffs in the present case were required to present prima facie evidence showing that a civil conspiracy existed. "Prima facie evidence" is that which if unexplained or uncontradicted is sufficient in a jury case can carry a case to the jury and to sustain a verdict in favor of the issue it supports. 29 Am.Jur.2d, *Evidence* § 5 (1967). Prima facie evidence may, of course, be contradicted by other evidence. *Id.* A jury will be the ultimate trier of fact in this case. Any decision by this Court concerning the adequacy of evidence refers only to the satisfaction of the elements of a certain claim, and should not be interpreted

as an opinion as to the ultimate outcome of this case.

## IV. *Consequences for North Dakota asbestos litigation.*

Recently, this Court held that asserting jurisdiction over out-of-state asbestos suppliers who had no contacts with North Dakota would violate the due process clause. *See Adolf v. A.P.I., Inc.*, 726 F.Supp. 764 (D.N.D.1989). Today's ruling does not change that result. In order to assert personal jurisdiction over a defendant, certain minimum contacts with the forum state are necessary. Plaintiffs making such a claim must be prepared to provide the necessary documentation. If a plaintiff makes a prima facie showing of conspiracy, however, the acts of a defendant may be attributed to its co-conspirators for jurisdictional purposes.

## CONCLUSION

Plaintiffs have made a prima facie showing that defendant Cassiar participated in a civil conspiracy to deceive the public of the dangers of asbestos. North Dakota's long-arm statute is designed to exert jurisdiction over those who commit torts, within or without the state, that cause injury to persons or property within the state. Such a statute is constitutional because it is based upon contacts within North Dakota. A co-conspirator is liable for the acts of the other members in the conspiracy, including those which establish jurisdiction.

THEREFORE IT IS ORDERED:

1) THAT DEFENDANT CASSIAR'S MOTION ASKING THE COURT "PURSUANT TO FED.R.CIV.P. 12(b)(2), TO DISMISS THE COMPLAINTS AGAINST IT FOR LACK OF PERSONAL JURISDICTION" IS DENIED.

2) THAT DEFENDANT CASSIAR'S REQUEST FOR ORAL ARGUMENT IS DENIED.