Diana L. **MOON**, Plaintiff and Appellee,

v.

Daniel L. **MOON**, Defendant and Appellant.

Civ. No. 920348.

Supreme Court of North Dakota.

April 27, 1993.

Robert A. Feder of Wold, Johnson, Feder & Schimmelpfennig, Fargo, for plaintiff and appellee.

Monty G. Mertz, Fargo, for defendant and appellant.

VANDE WALLE, Chief Justice.

Daniel L. Moon appealed from a district court judgment awarding his ex-spouse, Diana L. Moon, child care costs and attorney fees. We reverse.

Diana and Daniel were divorced by a decree of dissolution entered in the Superior Court of the State of Washington in July 1991. Residential custody of the couple's two children was awarded to Diana. The divorce decree also contained a Permanent Parenting Agreement in which Daniel was required to contribute a pro-rated amount of Diana's "work-related and/or school-related day care expense" incurred in caring for the two children.

Diana and the two children moved to North Dakota shortly after the divorce. Diana submitted her child care expenses to Daniel for reimbursement, but Daniel refused to pay and insisted upon additional information such as the social security numbers of the baby-sitters and copies of Diana's work schedule. Alleging Diana had not complied to his satisfaction, Daniel refused to pay the child care costs.

Diana commenced this proceeding for repayment by bringing a motion in front of a judicial referee, stating that the motion was brought pursuant to the Uniform Child Custody Jurisdiction Act, codified at Chapter 14–14, NDCC. Daniel responded by filing a motion,[1] notice of motion, and affi-

---

1. The motion read, in relevant part:
   "COMES now Defendant and herewith respectfully moves the court to:
   dismiss this case on the grounds that the Cass County District Court does not have jurisdiction in this matter.
   or,
   enter its order stating the Defendant does not owe any reimbursement to the Plaintiff for day care expenses because the expenses incurred by the plaintiff were not for day care.
   or,
   otherwise, continue this case for a sufficient amount of time for the Defendant [to] obtain legal assistance to prepare his defense in this matter.

davit.[2] The judicial referee dismissed the motion, finding he had no jurisdiction under Chapter 14–14, NDCC, to entertain the motion.

The matter was then renoticed in the district court pursuant to the Uniform Enforcement of Foreign Judgments Act, codified at Chapter 28–20.1, NDCC. Daniel responded by filing a motion,[3] notice of motion, and affidavit.[4]

A hearing was held in the district court, but Daniel did not appear. A judgment was entered that required Daniel to pay $1,699.78 of Diana's accrued child care costs. The judgment further provided that, because of his conduct, Daniel pay attorney fees in the sum of $500.00. Daniel's appeal to this Court raises as issues the district court's lack of personal or subject matter jurisdiction to rule on Diana's motion, and the district court's error in awarding attorney fees.

As a defense to Diana's action, Daniel contended that the district court lacked jurisdiction of him.[5] The district court assumed it had jurisdiction of this matter by tersely stating that "[t]he court finds it has jurisdiction in this matter."

The persons over whom a district court may exercise personal jurisdiction are provided for by Rule 4(b) of the North Dakota Rules of Civil Procedure. Consistent with the due process rights afforded to all citizens of the United States, an individual's liberty interests are protected from being subject to binding judgments of a forum with which the individual has established no meaningful "contacts, ties, or relations," so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 319, 66 S.Ct. 154, 158, 159, 90 L.Ed. 95, 102, 103 (1945).

Diana purportedly attempted to enforce a marital dissolution decree entered in Washington. She contends that Daniel should pay the child care costs thus incurred, as ordered by the dissolution decree. Disputing the meaning between "child care" and "day care," Daniel contends that Diana is attempting to force him to pay both child care and day care costs— child care costs being neither ordered nor contemplated by the Washington decree. Daniel contends Diana is, in reality, attempting a modification of the divorce decree by a court without obtaining jurisdiction of him.

The Permanent Parenting Agreement as incorporated into the Washington marital dissolution decree requires Daniel to contribute a pro-rated amount of Diana's "work-related and/or school-related day care expense" incurred in caring for the two children. If, as Daniel suggests,[6] a distinction is made in Washington between

---

This motion is based upon the accompanying Affidavit of Defendant, and the files and records of the case."

**2.** The affidavit stated that Daniel has been a resident of Benton County, Washington, for the past five years. The affidavit also disputed the meaning of the terms "child care," and "day care."

**3.** The motion read, in relevant part:
"COMES now Defendant and herewith respectfully moves the court to:
dismiss this case on the grounds that the Cass County District Court does not have jurisdiction in this matter.
or,
enter its order stating the Defendant does not owe any reimbursement to the Plaintiff for day care expenses because the expenses incurred by the Plaintiff were not for day care, or for other reasons the Plaintiff fails to prove her case.

or,
otherwise, continue this case for a sufficient amount of time for the Defendant [to] obtain legal assistance to prepare his defense in this matter.
This motion is based upon the accompanying Affidavit of Defendant dated September 4, 1992, and the files and records of the case."

**4.** The affidavit stated that Daniel has been a resident of Benton County, Washington, for the past five years, contested the meaning of the terms "day care" and "child care," and asserted the North Dakota court's lack of jurisdiction of both him and the action.

**5.** *See,* notes 1 through 4.

**6.** Daniel has brought our attention to the Washington State Superior Court Judges Association Child Support Guidelines which, he contends, distinguish between "day care" and "child care."

"child care" and "day care," and a North Dakota court orders the payment of both, the North Dakota court is modifying the Washington decree.

■ Actions which adjudicate the incidences of a marriage require *in personam* jurisdiction of both spouses. *Estin v. Estin*, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948); *Smith v. Smith*, 459 N.W.2d 785 (N.D.1990). Thus, a court must have personal jurisdiction of a nonresident spouse in order to validly adjudicate matters of alimony or child support. *Vanderbilt v. Vanderbilt*, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957); *Estin, supra; Poston v. Poston*, —— A.2d —— (Vt.1993).

*In personam* jurisdiction of a nonresident defendant may be obtained in one of two ways: (1) if the requirements of North Dakota's "long-arm" provision are met, indicating some "personal contacts" with North Dakota under Rule 4(b), NDRCivP, or (2) if the nonresident appears and fails to assert the trial court's lack of *in personam* jurisdiction [*see United Accounts, Inc. v. Lantz*, 145 N.W.2d 488 (N.D.1966) ]. *See also, In re North Dakota Personal Injury Asbestos Litigation*, 737 F.Supp. 1087 (D.N.D.1990).

■ The record demonstrates that Daniel has no connections to North Dakota other than the fact that his wife and child moved here and have become residents—indicia not meeting the "long arm" or "personal contacts" provisions of Rule 4, NDRCivP.

Nonresident defendants may also submit themselves to the jurisdiction of the court if they appear and fail to assert the trial court's lack of *in personam* jurisdiction. Daniel contends that his answers to Diana's motion unequivocally objected to the district court's jurisdiction to hear the matter.[7] Although he alleged other defenses and objections in his answer, because he "specifically and strenuously" objected to the jurisdiction of the district court, he contends he did not waive the lack of jurisdiction defense in accordance with Rule 12(h), NDRCivP.[8]

Diana contends that by submitting a variety of defenses and "clarifications" in his answer, Daniel entered a voluntary general appearance and therefore submitted himself to the jurisdiction of the district court in accordance with Rule 4(b), NDRCivP.[9]

Prior to the adoption of the civil rules, this Court held that defendants must make a "special appearance" if they wish to contest the jurisdiction of a court without submitting themselves to its jurisdictional reach. A special appearance was one which was made for the sole purpose of objecting to the jurisdiction of the court of the person of the defendant. If the appearing party asked for relief or disclosed a purpose which went beyond questioning the jurisdiction of the court, the appearance was "general," acting as a submission to the court's jurisdiction. *Petition of Village Board of Wheatland*, 77 N.D. 194, 42 N.W.2d 321 (1950); *McLean v. McLean*, 69 N.D. 665, 290 N.W. 913 (1940); *Allen v. Bohner*, 54 N.D. 14, 208 N.W. 234 (1926); *Gans v. Beasley*, 4 N.D. 140, 59 N.W. 714 (1894). However, these cases were based upon prior code provisions codified at Chapter 28–0701, *et seq.*, NDRC (1943); sections 7439 *et seq.*, C.L. (1913); sections 5264 *et seq.*, R.C. (1899); and sections 108 *et seq.*, C.Civ.P. (1877).

The North Dakota Rules of Civil Procedure were promulgated pursuant to an order of this Court dated April 25, 1957.

---

7. *See* notes 1 & 3.

8. Rule 12(h)(1), N.D.R.Civ.P., reads:
  *"Waiver or preservation of certain defenses.* (1) a defense of lack of jurisdiction over the person, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course."

9. Rule 4(b)(4), N.D.R.Civ.P., reads in part:
  *"Acquisition of jurisdiction.* A court of this state may acquire personal jurisdiction over any person through service of process as provided in this rule or by statute, or by voluntary general appearance in an action by any person either personally or through an attorney or any other authorized person."

Among the new rules adopted was Rule 12, NDRCivP. In its current form, this rule reads in part:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, *must* be asserted in the responsive pleading.... *No defense or objection is waived by being joined with one or more other defenses or objections* in a responsive pleading or motion."

Rule 12(b), NDRCivP (emphasis added). As opposed to the prior procedural rules under which the above cases were decided, this rule specifically allows defendants to claim a defense of lack of jurisdiction along with any other defense they wish to put forth.

In commenting on Rule 12 of the Federal Rules of Civil Procedure, the source of Rule 12, NDRCivP,[10] James Moore wrote that the necessity for special appearances now falls by the wayside:

"The theory of the Rule is that the quick presentation of defenses and objections should be encouraged, and that successive motions which prolong such presentation should be carefully limited.... Therefore, a defendant may present *every* defense in his answer.... Pleading such defenses as [lack of jurisdiction] in the answer along with defenses to the merits does not bring about any waiver of these defenses.... Special appearances are no longer necessary in any case. 'Rule 12 has abolished for federal courts the age-old distinction between general and special appearances.' An appearance does not waive the objection of lack of jurisdiction over the person."

2A James William Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶ 12.12, at pp. 12–89, 12–90, 12–93 (2d ed. 1993) [emphasis in original, footnotes omitted].

In *Smith v. City of Grand Forks*, 478 N.W.2d 370 (N.D.1991), we noted that Rule 12(b), NDRCivP, authorizes a motion to dismiss for insufficiency of service of process, and that a defendant may join objections to jurisdiction under Rule 12(b) with a motion to dismiss for failure to state a claim or any other defenses that may be asserted by motion without waiving the jurisdiction defense. Thus, we held that defendants may join a motion to dismiss for insufficiency of service of process with a motion for summary judgment on the merits, and in doing so, the defendants do not lose their jurisdictional defense. *Id.* citing 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1351, at pp. 243–244 (1990). We also observed that if a defendant's motion raises the lack of jurisdiction and also raises other defenses and objections, the court must first confront the jurisdictional issue before proceeding to the motions on the merits of the case. *Smith, supra,* citing *Harrison v. Prather,* 404 F.2d 267, 272 (5th Cir.1968). In so holding, we acknowledged that special appearances are no longer necessary when contesting jurisdiction if the lack of jurisdiction defense is raised in a defendant's first answer.

■ Because Daniel raised the lack of jurisdiction defense in his first answer, he did not waive his jurisdictional defense or submit to the jurisdiction of the district court by filing his multi-objective motion.

The issue of jurisdiction also seems apparent from the vehicle used by Diana to initiate this action. Diana renoticed this action under the framework of the Uniform Enforcement of Foreign Judgments Act, codified at Chapter 28–20.1, NDCC. The Act provides for a summary procedure for actions on foreign judgments by providing the enacting state with a speedy and economical method of doing what it is required to do by the Constitution of the United States, that is, to provide full faith and credit to the judgments of other states. *American Standard Life & Acc. Ins. Co. v. Speros,* 494 N.W.2d 599 (N.D.1993).

**10.** The North Dakota Rules of Civil Procedure were adopted from the Federal Rules of Civil Procedure. *Hamilton v. Hamilton,* 410 N.W.2d 508 (N.D.1987). Federal court interpretations of the Federal Rules which correspond to the North Dakota rules are persuasive. *Wayne–Juntunen Fertilizer Co. v. Lassonde,* 474 N.W.2d 254 (N.D.1991); *Farmers Union Oil Co. of Williston v. Harp,* 462 N.W.2d 152 (N.D.1990).

It would appear that the intent of the Act is to give a holder of a foreign judgment, with respect to claims on the judgment debtor's property and the remedies of levy and garnishment thereon, the same rights and remedies as the holder of a domestic judgment. 46 Am.Jur.2d *Judgments* § 906 (1969). The rationale for this is that when the debtor moves across state lines, or has property in another state which can be used to satisfy the judgment, creditors may invoke the Act to allow them to follow the debtor into the new state and collect on their judgment.

 Presumably, the purpose of the Act is to have the foreign judgment enforced in the registering state. Diana, however, would have us turn the intent and purpose of the Act on its head: the Act appears inapplicable to a judgment of a creditor like Diana moving across state lines to North Dakota, registering the Washington support order where the registration would result in a de facto modification of the order, and, in turn, having the North Dakota judgment transferred to Washington for the enforcement of the modified Washington judgment in Washington because that is where the judgment debtor, Daniel, resides. Because only the Washington Court has *in personam* jurisdiction of Daniel, and the North Dakota judgment must be enforced in Washington, this circuitous procedure to modify or enforce support not only appears contrary to the purposes of the Foreign Judgments Act, it is unfair to Daniel and those similarly situated.

Because enforcement of an order would necessarily occur in Washington, and the North Dakota courts had no *in personam* jurisdiction of Daniel, Diana's proper recourse is to petition the Washington court for clarification or modification of the support decree either directly or through such vehicle as the Revised Uniform Reciprocal Enforcement of Support Act (1968) Ch. 14–12.1, NDCC, whose purpose is to "improve and extend by reciprocal legislation the enforcement of duties of support." NDCC § 14–12.1–01.

In view of the district court's lack of personal jurisdiction of Daniel, the attorney fee award must also be reversed.

The judgment of the district court is reversed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.